Oh, we have one case this morning, but I'm hearing an echo of myself. I don't know what that problem is. Number 21-50792, Whole Woman's Health v. Jackson. And we'll hear first from Ms. Thompson. Thank you, Judge Jones. May it please the Court, Texas law controls whether there's federal jurisdiction in this case. Three different courts have issued three different sentences as to the meaning of the relevant Texas law. This Court should now certify that question to the Texas Supreme Court, which is the only court that can give a definitive answer. An immediate remand at the plaintiff's request is not an option because issues remain in this interlocutory appeal to be resolved. I'll discuss first certification and then turn to the issues remaining in the case. Your Honors, all three of this Court's typical factors for certification are met in this case. First, there is no Texas authority interpreting SB 8 and the licensing officials' authority to enforce it or lack thereof. When certifying a novel question of state law can save time, energy, and resources, as the Court explained in Arizonans for Official English. Comedy also favors certification here. It's especially important to allow the state courts to weigh in on the meaning of state law when that state law is being challenged as unconstitutional. Ms. Thompson, I've been on the Court for ten years and I've only requested certification less than half a dozen times. So this case has prodded me to explore. It's a somewhat recent device. The Supreme Court approved of it in 1974, Lehman Brothers. But in that case, Chief Justice Rehnquist's concurrence as well as our Court, Wright and Miller, all courts do agree, say, courts should decline to certify when the request is made too late. And I'll tell you my specific difficulty and then ask you a question. Here, the defendants never asked any federal court to abstain or request certification. Instead, what was said is the opposite. The defendants told the Supreme Court this law is unambiguous. The defendants lost that. And now on remand to a court that has to implement their law of the case, you're asking us, as I see it, and quote the First Circuit, to get a second bite. So my question is, do you know of any circuit that has ever certified a state law question where there was, as you say, an eerie guess made by the Supreme Court? Do you know of any circuit that has certified after the Supreme Court? Your Honor, I don't have an answer to that. I'm not aware of that question, but I also haven't looked into it. But think about that. So you can't think of a case where the Supreme Court has actually ruled on a state law question and then on remand the circuit court, instead of implementing that eerie guess, however respectful, whatever language of comedy, the circuit court that has to implement it instead decides to certify at the request of the party that lost the argument. You have no authority to do that. No, Your Honor, I do not have an example of that. It makes sense, though, for certification here. The Supreme Court was very clear that its reading of Texas law was tentative and not authoritative. Well, they don't – not a single justice, even Justice Thomas, used the word tentative. That's your word. In other words, eight to one doesn't sound too tentative. And here's the language. You know it. This is the explicit holding, quote, eight justices hold this case may proceed against Mr. Carlton, Ms. Thomas, Ms. Benz, Ms. Young, your clients. What's tentative about that? Oh, Your Honor, the court's holding on sovereign immunity is not tentative. But the court's reading of Texas law is. The court repeatedly stressed that the meaning of the Texas law here, SB 8 Section 3, is not conclusively established. The plurality opinion uses the – it appears. That's basic law. Of course the Supreme Court knows. Every justice, Justice Gorsuch, Justice Thomas, they both said it. But Texas does get the last word. But that's in a parallel or future case. Can you think of any case where in the very case they went ahead and gave an answer, somehow Texas, we as a circuit court, in the same case – I mean, this is the same case. Your Honor, that's what makes it so unusual that the court stressed repeatedly that its reading of Texas law was uncertain. Of course, everyone knows under Erie, the Texas Supreme Court's reading controls. Justice Gorsuch quoted Pullman for that very language. No matter how seasoned the judgment of a federal court, it can only be a guess. Your Honor, that's why it's so remarkable in our view that the Supreme Court emphasized repeatedly that its reading was uncertain. If you prevail – Did the court have the option – did the court believe it had the option or was it requested to remand directly to the district court? Yes, Judge Jones. And didn't the state at that time say, please don't do that because only the Fifth Circuit can certify? Yes, Your Honor. Our response brief did let the court know that this was our intent. And so it certainly can't be said that it's a surprise that we've asked – It isn't only the circuit court. They could have, correct? I'm sorry, I didn't hear you. The Supreme Court could have certified. Oh, yes. The Texas Supreme Court would accept a certification from the U.S. Supreme Court. And the mandate to us didn't instruct us to certify. Nor did it tell the court not to. It was typical remand language. Remand consistent with this opinion. Indeed. And certification is consistent with the court's opinion, which repeatedly stressed that this is a novel question of Texas law. Consistent with but never, ever done in the history of the United States that you can tell us. I'm not aware of such a case, Judge Hickman. Well, let's assume you prevail and we do certify. I have two questions. What if Texas eventually decides to decline? And then relatedly, oppositely, what if Texas accepts the certification and responds exactly as you think, unlike the eight justices that you argued before in the Supreme Court? What's the effect when it comes back to us? Because we're bound by their answer. Is it tantamount to us saying, well, Justice Thomas was right after all, and we as a circuit court are telling the Supreme Court they issued an advisory, an opinion? Not exactly, Your Honor. What's the effect of the Supreme Court's opinion? What do we say? So the Texas Supreme Court ruling for us in answering the question would be giving the dispositive answer on Texas law. What's the effect of the Supreme Court's opinion? What eight justices of the Supreme Court wrote? Is it just advisory? No, Your Honor. What's Railroad Company v. Pullman about? What is the whole idea about Erie Railroad, about state courts arbitrate state law? Indeed, Judge Jones, that's a very helpful question for answering that. Justice Gorsuch's plurality quotes Pullman and emphasizes that it is important for the federal courts to abstain, and now that there's a certification procedure to send novel questions like this. But Pullman abstention is before the court decides. And everyone knows it doesn't mean we abdicate. And what it certainly can't mean is the litigant says the opposite. This state law is so clear, we want you to decide. Oh, we lose. Down below, we get a second bite. Your Honor, the plurality opinion introduced a brand new interpretation of the law. The plaintiffs did not advance the savings clause reading of SB 8's enforcement provisions. So you're correct in saying that we agree the statute was unambiguous in the arguments that were presented to this court at the motions panel stage and as they were briefed and argued to the Supreme Court. Had the law been as definitive as the Supreme Court says, could it not have simply rendered judgment for the plaintiffs? Well, because this is an interlocutory appeal, no, it could not have. Well, so it's an interlocutory appeal, so the case isn't over, right? Correct. So what remains before this court is the question of Article 3 standing and most fundamentally the sovereign immunity collateral order appeal as to the attorney's fees claims, which are in Section 4 of SB 8. I'd like to follow up on some of Judge Higginson's questions. It seems to me in the briefing before us that you are asking for certification, not so that we can somehow reach a different result on the motion to dismiss with respect to the agency defendants, but instead so that the district court will have a definitive answer as to the dispositive issue of Texas law for further stages of the proceeding. Is that what you're saying in your briefing? In part, yes. That definitive answer will guide the rest of the case when the plaintiffs have an evidentiary burden after the motion to dismiss. And the district court couldn't. The district court, I mean, in my view, the district court needs to know the answer to that question. And the district court cannot certify. Correct. So whether it's with respect to a preliminary injunction or to summary judgment or any other stage of the proceedings, I would think everyone would agree, maybe everyone doesn't agree, that the dispositive answer to this question with respect to the agency defendants is a question of Texas law. And the courts need to know that. Correct. So when it comes back, let's say, just to follow up on what Judge Higginson said, let's say we agree to certify, and then it comes back to us with an answer. In your view, what would be the next step for this court? This court would then resolve the federal questions that are before it in the interlocutory appeal based on the answer to the state law question from the Texas court. So we wouldn't just remand because now we would have the answer to the certified question and then the district court could proceed with that answer in hand? No, Your Honor. This court would proceed first because the interlocutory appeal is still before it. So this court taking that answer would answer those issues that remain open, the question of Article III standing and the rest of the collateral order appeal. And then based on that ruling, of course, in our view, the remand would be with instructions to dismiss. But either way, the court would resolve the federal law questions. What do you think the holding of the Jackson case from the Supreme Court is? How would you phrase it? The court held that sovereign immunity does not bar the claims at the motion-to-dismiss stage. It may not bar. Well, based on their eerie guess as to Texas law. Based on their eerie guess, and a guess is a guess. So if we send it to the Texas Supreme Court and the Texas Supreme Court says the disclaimer, which the motions panel found pretty definitive in the statute, is a specific section that controls over other general enforcement sections in the Texas Health and Safety Code, then I suppose maybe we ought to certify back to the U.S. Supreme Court and respectfully ask whether they need to reconsider. I think we're then bound by the state law as the state's highest court articulates it. Yes. The state court's ruling on the meaning of state law is dispositive. I agree, Judge Jones. And an eerie guess is valid only so long as you need an eerie guess. So what's your position? Is it remand directly upon certification answer? Or is it what you answered to Judge Duncan that we would then address other issues? Is it what Judge Jones just said, which is we would certify back to the Supreme Court? What's the direction? I didn't say that. In her question, she proposed it. You can't do that. That's what I was thinking, but she seemed to accept that. I was joking. Oh, you were joking. She wasn't accepting. She smiled. She understood. I didn't understand the joke. I'm poor with humor. But I guess the eerie guess point is where I'm stalling out because let's imagine, to put aside my concern in this case, which is my oath to implement the law of the case, not to second-guess the Supreme Court, not to use dicta to disparage what I think is a holding, but put aside my oath in the circumstance I think I'm in. Let's imagine Texas is like the dozen highest state courts that do accept certification from district courts. So imagine that we as a panel made an eerie guess. We said this is the answer to state law. And we remanded to a district court in one of those states. Your position is the district court could say, well, circuit court, we see you made an eerie guess, but I don't think I agree. I think it's an open question. You were tentative. And the district court could then certify the question we had answered? If the state had a procedure for that, yes, Your Honor. Okay. Do you know of any case in the dozen? This isn't a joke question. Have you ever seen a district court anywhere in the country, because dozens of highest courts allow that, where the district court gets an eerie guess back? That's their mandate. But instead, the party that lost in the circuit court can ask the district court, can you think of a case? I'm not aware of such a case. How does that harmonize with the law of the case? How can that possibly fulfill our oath? Your Honor, the district court in your hypothetical would need to proceed past the motion to dismiss stage. It would again be confronted with questions of law at summary judgment, preliminary injunction, final judgment, and it would then need to decide questions on the evidence. And so, hypothetically, it could be appropriate for certification to the state supreme court. Of course, Texas doesn't have a procedure. I know you just ran out of time, but I would like you to clarify one thing from your briefing. In your view, the questions of standing, ripeness, and other justiciability questions with respect to the state agency defendants, you think those are still before us as part of the original interlocutory appeal. Is that correct? Correct, Judge. And your view is that the holding of Whole Woman's Health v. Jackson doesn't resolve those questions? Correct. The plurality as to the licensing officials issues a holding on sovereign immunity. Well, and what about Section 4? The Supreme Court opinion did not address Section 4 at all, and that's unsurprising because it wasn't part of the question presented, so the court didn't. But we have no briefing on those points before us now, or do we? You do and you will. The opening briefs that the appellants filed before the grant of cert before judgment address the Section 4 issues. In our view, it might be appropriate to file supplemental briefs in light of the further developments, but the rest of the briefing is not yet completed, so that's why we've. Right. Okay. Thank you. Erin? Good morning. May it please the Court. Mark Herron for the appellees. This is an interlocutory appeal from the district court's order denying the motions to dismiss. The only question presented in this appeal is whether that order is to be affirmed or reversed. The Supreme Court has already made that determination. And as the defendants conceded on page 3 of their reply and again this morning in oral argument, the Supreme Court ordered that the claims against the licensing officials must be allowed to proceed past the motion to dismiss stage. The defendants admit that they are not seeking to relitigate the Supreme Court's ruling that the claims against the licensing officials can survive a motion to dismiss. The only way that this case can proceed past the motion to dismiss stage against the licensing officials is for this court to remand, and it should do so immediately. Any further delay would be inconsistent with how the Supreme Court has handled this case. I really question that premise, Mr. Herron, because the Supreme Court had multiple opportunities to grant an injunction against SB 8, to send it directly to the district court, and it didn't do any of that. So I understand your position, and you've sought, as is your right to do, you've sought a mandamus in the Supreme Court. That's perfectly fine, but it's the urgency part that I don't understand. So let me put a finer point on it. The Supreme Court, whatever it did in Whole Women's Health, I think everybody would agree it narrowed the universe of ex parte young defendants that you could seek redress against. So if we just remanded right now, and you sought a preliminary injunction against those defendants, how would that injunction redress all the urgent harms that you identify in your mandamus petition, given that it is against specific defendants who have specific duties under state law? Your Honor, what would happen on remand once this case gets past the motion to dismiss stage is not presented to this court right now. Oh, I know, but I just wanted you to answer that question. Well, Your Honor, with respect, it's not a question that this court should consider. The only thing that this court can do that's consistent with the Supreme Court's judgment is to remand. So basically you have no answer to Judge Duncan's question. Is that correct? No, Your Honor. This is not a press conference. This is an argument in court, and it's a very legitimate question because in considering the impact of what a certification would be, an alternative is to consider the impact on the district court. Your Honor, the standing law is clear that an injunction does not have to redress all of the injuries, and the Supreme Court has already addressed this. On the top of page 14 of its opinion, it said that the plaintiffs have identified injuries that are traceable, and then it goes on and explains how those injuries are traceable to the licensing officials. And then it says that that allows this case to proceed past the motion to dismiss stage. The only way that that can happen is if this were remanded. I mean, you're referring to Part 2C of the opinion, which isn't part of the opinion of the court. So I'll just ask you, let me ask it this way. I understand, because I've read a lot of papers in this case, I understand that the principal injury that you're seeking to redress here is the threat of SB 8 lawsuits puts a chill on your client's provision of abortion services, right? I mean, that's obvious. So how would an injunction against these licensing officials redress that at all? Well, one way, Your Honor, and again, I do want to begin my answer with that's not a proper question before this court. But one way that it would is that the state of Texas' argument has been all along that the only way to defend against this law is to violate the law and then raise your constitutional arguments in the course of those lawsuits. And right now the Supreme Court has ruled that Texas law apparently allows the licensing officials to take actions against medical licenses. And so it's a very different world in which now a provider has to now decide not only am I going to risk all of these lawsuits, but also risk my medical license. And that would redress the—an injunction against the defendants would redress that part of the injury. But again— One last time. Could an injunction say anything beyond these licensing officials cannot take any regulatory action against an abortion provider based on a SB 8 violation? Because the licensing officials are the only defendants left in the lawsuit, I think the injunction would only run against those licensing officials. Yeah, but could it say anything more than that? Could it say and private parties cannot sue under SB 8? Your Honor, the Supreme Court's already resolved that and said that the officials who are part of the judges and the clerks who were named are already dismissed from the lawsuit. So the only thing that's remaining in the case under the Supreme Court's opinion is the Supreme Court has said that this case can move past the motion to dismiss it. That's why I don't understand the urgency point. I mean there's litigation going on in State courts that, as I understand it, has been successful against SB 8. So I don't understand the urgency of this particular lawsuit given how the Supreme Court has narrowed the potential universe of relief. Your Honor, the Supreme Court granted its—issued its mandate forthwith rather than waiting the usual 25 days. This Court has now—the case has been pending in this Court for 22 days. That delay is upending the Supreme Court's issuance of the mandate forthwith. And I do want to clarify. You said that—about the question about whether the Court, by remanding to this Court, implicitly allowed this Court to certify. I think the answer to that is yes. I didn't say that. Well, that question came up earlier, Your Honor. Are you aware of cases where the Supreme Court has remanded, say, directly to a district court or remanded to a circuit court and said the circuit court shall forthwith remand to the district court and do X, Y, and Z? I'm not sure, Your Honor, but I can tell you— There are such cases. —the Supreme Court said—the defendants argued to the Supreme Court that the usual practice is for the Court to remand to the court of appeals. And the Court did so for proceedings consistent with its judgment. Its judgment was that this case can proceed past the motion-to-dismiss stage on all claims. And the only way that this Court can effectuate the Supreme Court's judgment is to remand to the district court. Mr. Herron, let me ask you, what is the status of the challenges in Texas State Court? Your Honor, I believe that there's been an appeal that's been filed in the cases that are pending in Texas State Court. I thought the Austin Court of Appeals had one of the cases. And did they expedite that, or did your clients ask them to expedite it? Your Honor, with respect, my clients are not actually involved in those cases. There are other— I'm sure that you have some idea. I actually don't know whether the Austin Court of Appeals has expedited that appeal or exactly what is happening in that appeal. Well, don't you agree that at some—I mean, the Court says it appears Texas law imposes such and such. It appears to impose a duty on licensing official defendants. Something about at this stage of the briefing, they say that in Justice Gorsuch's opinion. And what would your position be if the Texas State—before Judge Pittman rules, which I agree is counterfactual, but let us say it got back at Judge Pittman, and before he rules, the Texas courts say the no-action language of this 171 means no action and these officials have no authority whatsoever. Then where would the federal courts be? Well, the question of those officials' authority is not at issue in the cases that are pending. I'm asking you this question. Answer the question. Then if the question were answered by the Texas Supreme Court, that would certainly find Judge Pittman on remand. But the— Do you agree, do you not, that the Texas courts ought to be able to decide that question of Texas state law? If the question is presented to them in an appropriate manner. But I do want to point out, actually, that sending the question now is not even appropriate under the Texas rules of appellate procedure. My point is this. Why should we go to the effort, we, the federal courts, meaning us and Judge Pittman, go to the effort of enforcing what you say is a definitive opinion, what others read to be a non-definitive opinion, if we're all going to have egg on our faces if the Texas Supreme Court ultimately rules that no enforcement means no enforcement by state officials? So, I have two points, Your Honor. First, under Rule 58.1 of the Texas rules of appellate procedure, the Texas Supreme Court can only answer questions of law certified to it by a federal appellate court if the certifying court is presented with determinative questions of Texas law. The only question that's been presented to this court is whether the case can move past the motion to dismiss stage. This court, I mean, you know, to some extent, this is a response to what Judge Higgins was hypothesizing. We have certified cases sua sponte in the past. I mean, this is not unusual. We've heard oral argument. The parties haven't even asked for it. We figured out that we needed to at least attempt to certify. It's not an unusual practice. And I'm sure you're aware the court has been very sympathetic to certifications in recent years, and they also expedite them. Your Honor, I think it is a highly unusual practice for a court of appeals to certify a question that has already been decided by the U.S. Supreme Court when the U.S. Supreme Court said that the case must, and defendants can see— I'm interested in Judge Jones's comment, but put aside the Supreme Court. We do sua sponte certified. But do you know of any case where we've decided a case and then certified somehow on motion to reconsider? I'm asking counsel. No, I'm not aware of that. So that's the situation we are in. It happens to be a decision by the Supreme Court. So I'd like to tell you, my concern you heard expressed to opposing counsel, it's really the law of the case. If you don't prevail, if we do certify, what is the consequence? Would we be saying—would we be divesting the Supreme Court of jurisdiction ourselves, or would we be essentially saying to them that they indulged in the forbidden fruit of hypothetical jurisdiction? They assumed a predicate, and we found out it's wrong. It would be this Court second-guessing the Supreme Court's interpretation of— But their opinion. Is it—are we telling them case—Article III, you rendered hypothetical jurisdiction. You gave us an advisory and opinion because it turns out it's wrong, and you didn't explore it. You don't have to agree if I'm wrong. Arguably, I think that may be right, Your Honor. I think it would certainly be this Court second-guessing the U.S. Supreme Court's. After the Supreme Court explicitly made clear that it was stepping into this Court's shoes, and it was deciding the appeal, the only appeal that is before this Court, the Court has already affirmed in part and reversed in part— Should we wait for your mandamus petition to get resolved? That's sort of a new wrinkle because it's like a sword of Damocles over us. I guess they're watching to see are we going to actually do anything, are we going to turn 22 days into 30 days. What would you suggest we do with the mandamus petition? Your Honor, I don't think the Court should wait. I think the Court should remand it immediately because that is the only thing that this Court can do. My concern is law of the case, and I suppose they can police that. The ordinary response date for the mandamus is February 3rd, is it not? It is, and we filed a motion to expedite the response. Let me ask you a couple of other questions. The Court—what is your position about whether the Court decided Article III standing as to these officials and the status of Section 4 of the statute? So as to standing, Your Honor, the Court was explicit that the case can proceed past the motion to dismiss it. But that doesn't say anything about standing, does it? Your Honor, both the majority and the dissent—so first of all, the standing question drew a dissent from Justice Thomas, and he argued in footnote 1 of his dissent that the licensing officials don't have standing. Where did a majority of the Supreme Court take up that issue? They responded to him on pages 13 and 14. Is that part of the opinion of the Court? It's in Part 2C. Well, so you're—I mean, you thought—we're not going to let this argument go on forever, and my point is this. You disagree—what do you say about—you take the position that the Court implicitly decided or explicitly decided standing as to these officials? Yes, and the question of licensing of their authority has been the question. That was briefed—the arguments that the defendants presented to the Supreme Court about standing were the exact same arguments that they presented on Ex parte Young. Well, they didn't—there wasn't that much briefing about standing in the Court. Everything was filed. I disagree, Your Honor. They—in their brief, I believe it was pages 18 and 19 of their Supreme Court brief, they have an argument under a heading, Executive Officials Cannot Enforce SB-8, and then they have subheadings saying that this means no Article III standing and no Ex parte Young standing. It's the same argument. I mean, specifically as to the licensing defendants, they're citing Whitmore, Clapper. They made this exact argument, citing Supreme Court law. They are doing nothing they can't enforce. Okay, but move on. I mean, I'm just trying to get the scope. I still haven't gotten an answer to my question, however. Where does the majority address standing? You said pages 12 and 13, and my question was, is that part of the holding of the Court or the opinion of the Court? I don't need to lengthen anything. I just want an answer, yes or no. It is—at the beginning it says that Justice Gorsuch announced the judgment of the Court and delivered the opinion of the Court except to Part 2C. But it is clear that—but that's—but the whole—that part is the entire part of the opinion that addresses— Part 2C. That's the part of the opinion that addresses the licensing officers. Every court has to confirm itself to have standing before they rule. You can't move past standing. I agree with that, Your Honor, and that's what the Supreme Court— I mean, that's what our panel at the state stage said was non-negotiable, fundamental. There's no such thing as hypothetical jurisdiction. You can't assume standing. Isn't that correct? We said that clearly. That's right, Your Honor, and the Supreme Court said that the case can move past the motion to dismiss stage. Is Ex parte Young a doctrine of justiciability? It—well, the Supreme Court said that it was deciding both questions of sovereign immunity and justiciability, and I believe that was on page 14 that—in Part D of the opinion, where the Court at the beginning says that it was focusing primarily on the Texas official defendant's motion to dismiss on grounds of sovereign immunity and justiciability. Part D, Dixon. That's right, but the Court was there explaining what it was doing in the rest of its opinion. It was addressing both sovereign immunity and justiciability. Well, as you know, if Ex parte Young is wrapped up in justiciability, the court can decide any issue of justiciability in no particular order. But get on—move on to Section 4. Where was Section 4 articulated or decided in the Court's opinion? So, three things to point to. First of all, on page 4, the Court said it was reviewing the order under review, which is the district court's order denying the motions to dismiss. On pages 17 to 18, the Court says that certain defendants must be dismissed from the suit. And then as to the licensing officials, it says eight justices hold this case. This case may proceed past the motion to dismiss stage. Then also on page 14, the Supreme Court cited parts of the complaint as demonstrating injury in fact. And one of those paragraphs, paragraph 108, is a paragraph discussing the injury imposed by the Section 4 fee-shifting provision. I do want to make the point that if this Court were to certify that the question— so the defendants are making clear on page 3 of their reply that there are sort of two questions related to the licensing officials' authority. The first is whether they have the authority. And the second is whether, even if they have the authority, they will exercise the authority. And I expect that on remand the defendants are going to argue that even if they have the authority, that they're going to try to put in evidence or they're going to argue that they're not going to exercise the authority. If they were to prevail on that, that would obviate the need for any court to revisit the question of whether the licensing official defendants have the authority to begin with. I don't think we can predict that at this point. And I don't think we can also, just like these prosecutors around the country are saying, I'm not going to prosecute theft under $900. Well, the law is still on the books. I think that would be a stretch, frankly. So I don't understand your point. But the defendants have made the argument, and they've repeatedly made the argument, that even if they have the authority, I believe they made the argument in this Court, that they won't exercise it. They can try to put in evidence on that question, Your Honor. The point that I'm making is because you can't predict, these are questions that should be handled by the district court on remand in the first instance. Section 4, which the district court did rule on, it was put on appeal to us. And the Supreme Court affirmed it as to the licensing officials. The Supreme Court affirmed the district court's order denying the motions to dismiss. And let me ask you one final question from my perspective. What happens if the Supreme Court, as many expect, says something about Roe v. Wade that implies that Section 8's prohibition on abortions after heartbeat may be enforceable? What happens then? Is this case alive or dead? Your Honor, that's a question that the district court would be, if the case is still pending in the district court. Well, maybe we ought to just sit on this until the end of June. Your Honor, that would be completely inconsistent with how the Supreme Court— Well, but by that time, it's very possible that the hot potato will be in the seat of the Texas Supreme Court, don't you think? As Chief Justice Roberts said, this case should be, the district court should enter appropriate relief without delay. The Supreme Court—I understand, Your Honor, but the court has already affirmed this part of the— has already affirmed the district court's order. I'm not asking you to be an endemist. I'm just trying to be realistic. And then the other part of this is, are your clients undertaking— and maybe this is—it's not the Fifth Amendment. There's no enforcement at this point. Are they undertaking—have they been chilled from offering abortions earlier than heartbeats? Or is that just a hypothetical chilling? Your Honor, all of those arguments were presented to the Supreme Court, and the Supreme Court recognized that this law is causing a chill. So what I'm hearing from between the lines here is that since the Texas courts— purported to enjoin the law, that a lot of business as usual is being conducted in the Texas clinics. Your Honor, there is absolutely nothing in the record of this case discussing that. In fact, the record on this case, the order that is— There's no chilling effect unless somebody's actually chilled. Your Honor, this case arises from a motion to dismiss on a complaint. The complaint was filed before the law even took effect. The only thing in the record— How? The only thing in the record—and the Supreme Court directed that the allegations of the complaint were sufficient to move past the motion to dismiss stage against these defendants. So on that—so when this case gets back to the district court, then that can become an issue if, in fact, it gets back to the district court before the Supreme Court decides to mis-sicificate. The district court can handle any remaining questions in the first instance on remand. That is this court's normal practices to allow. I do remind you that standing must exist at every point in the litigation. And the Supreme Court has already affirmed the district court's order allowing that standing exists past the motion to dismiss stage. And I just want to clarify that if this court were to sit on this motion until June, that would be completely inconsistent with the Supreme Court's issuance of the mandate forthwith rather than even waiting the usual 25 days. This court can—the only thing this court has jurisdiction left to do is remand to the district court, and it should do so immediately. Do you have any empirical evidence as to whether when the court is remanded forthwith, the other courts have felt obliged to act forthwith? I just wondered. Judge Higginson's asking a lot of empirical questions, so I— The cases that I have looked at, and I haven't looked—I haven't done an exhaustive search, but yes, the cases that I have looked at, the courts of appeals did remand very quickly. And I think that that's exactly what this court should do. All right. I'm not going to discuss it with you further. Thank you very much. Okay. Rebuttal. Thank you, Judge Jones. I just want to— It's not the position of Texas that we should sit on this until Dobbs is issued, is it? Your Honor, the jurisdictional issues in this case do not turn on the underlying substantive due process issue. I'm just asking the exact same question. Are you recommending that we should sit on this remand until Dobbs issues? Yes or no? We have not requested that, no, Your Honor. I've got three questions that are pretty quick. The Texas—if you prevail, all three assume you prevail, the Texas Supreme Court can issue decisions very quickly. It's done so in the last year in a matter of days and weeks. Would Texas oppose a motion to expedite if we do certify? I can't represent, you know, conclusively as to whether or not we would, but we would certainly, you know, be— You would certainly what? We would certainly be receptive to— And when the language that you describe as tentative, which I don't accept is tentative, that dicta, it still is just as Judge Jones quoted. It was eight justices saying that your clients appear to have—they're likely to have authority to enforce. Would you oppose a motion to preliminary and join this pending certification on that logic? Yes, Your Honor, we would oppose. Okay, so you can answer that question, but you can't answer the first one? Correct. Okay. The last question is—and again, I often state things, but I respect people that push back, so it's stated the following way. Can you think of any reason, if we do certify, that we would certify the state law question that you lost 8-1, but not the state law question that opposing counsel lost only 5-4, which is whether the attorney general has authority to enforce? Is there any reason our certification question—I'm asking counsel the question. Yes, Your Honor. Is there any reason that Texas would oppose that the certified question be both state law questions, not just the licensing defendants, but also the attorney general? Can you think of one? Your Honor, the plaintiffs haven't requested that. But our practice is always to have counsel together construct. That's the Fifth Circuit's practice. We wouldn't say, you get to write the question. They don't. That was a state law question that divided the Supreme Court 5-4, attorney general enforce or not. Not ex parte young. Can you think of a reason that we wouldn't certify that, too? Yes or no? The Supreme Court's opinion did not reflect any uncertainty as to that question. It was a 5-4 vote. The majority there, and as part of the holding of the court, the court agreed that there was no uncertainty. That's part of the holding. But it's not the holding that you're—I mean, eight justices hold. Somehow that's not a holding. But the one you won is? Normally this court isn't litigating on behalf of one side or another. Is that a question to you or to me? Am I litigating by—I think—do you appreciate my—would you like to persuade me? I don't sense that you're intimidated. Of course, Your Honor. So you don't need any assistance. I've asked you to question any premise I've made. So if the suggestion is I'm litigating, push back on any premise that I've had behind my question. Has there been any unfair question to you, counsel? No, Your Honor. And I do have two points that I'd like to make quickly in my remaining time. The first is to the question of a court needing to decide Article III standing at every stage. Of course it must. The Supreme Court had appellate standing. So its opinion was not advisory, even if the Texas Supreme Court later decides the Texas law question differently. Appellate standing exists. I don't understand the plaintiffs to contest that. I'd also just, in case it's not clear, emphasize— Appellate standing. What's a case for that? What do you mean appellate standing? That the case is properly before the court of appeals, or in this case the Supreme Court, on cert before judgment. That court has jurisdiction to consider a collateral order appeal based on the denial of sovereign immunity. That collateral order appeal did not require it to decide all jurisdictional issues in the case that might exist below in the federal courts. It's not uncommon for the Supreme Court to decide one jurisdictional issue without exploring the others, because appellate standing can exist even if there may turn out to be other jurisdictional defects in the case. But we disputed before it got up there that there was standing as to the licensed defendants. You pressed that explicitly, citing Supreme Court law. Justice Thomas identified it. What's your position, that eight justices just didn't see it, or they assumed it, or what? Your Honor, I don't think they didn't see it. I think they explicitly held—addressed and issued a holding on the sovereign immunity piece of the case, which was the basis for the collateral order appeal. I see my time has expired. I'm sure you have more time. I asked a lot of questions. I'm sure that— You can have a minute more. Thank you, Your Honor. Just to sum up, I want to emphasize that contrary to my friend on the other side's characterization, we do not agree that the Supreme Court's decision says the case can proceed in total past the motion-to-dismiss stage. The court held that sovereign immunity does not bar it at the motion-to-dismiss stage, but that does not mean that there are not other issues that still remain. And, of course, it's our position that this court still needs to resolve Article III standing, which is distinct from Ex parte Young, most notably because Ex parte Young does not have an actual or imminent requirement. So the court should resolve the issues that remain in this case now, and part of that requires, in our view, certification of this novel question to the Texas Supreme Court. Thank you. Thank you. We'll stand and recess. Thank you. Thank you.